**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA

                                                   DOCKET NO. 3:15-CR-0269 (TJM)

V.

ROBERT SNYDER,

                    Defendant.
_____

## MR. SNYDER'S APPEAL OF PRETRIAL DETENTION ORDER

### PRELIMINARY STATEMENT

      This memorandum is submitted in support of Defendant Robert Snyder's appeal of Magistrate Judge Thérèse Wiley Dancks' Pretrial Detention Order filed September 4, 2015. (Dkt. No. 8.)

      On August 31, 2015, Mr. Snyder was charged by complaint with Attempted Receipt of Child Pornography and Possession and Accessing with Intent to View Child Pornography in violation of 18 U.S.C §§ 2252A(a)(2) and 2252A(a)(5)(B). (Dkt. No. 1). Specifically, the complaint alleges that Mr. Snyder (1) knowingly attempted to receive child pornography and material that contained child pornography; and (2) knowingly possessed, and knowingly accessed with intent to view, computer disks and other material that contained images of child pornography.

      On September 1, 2015, the government moved to detain Mr. Snyder, arguing pursuant to 18 U.S.C § 3142(f) that Mr. Snyder posed a risk of flight and a danger to the community. Mr. Snyder sought release. A detention hearing was conducted at which the Court heard evidence demonstrating Mr. Snyder's strong ties to the region, his lack of a criminal record, and a

background that is entirely free of any complaints of hands-on conduct involving children. After the detention hearing, the Court issued an order granting the government's motion and detaining Mr. Snyder. (Dkt. No. 8.) The Court's Pretrial Detention Order noted very few facts about Mr. Snyder's alleged danger to the community and none at all about flight risk. *Id*. at 3-4.

Mr. Snyder now appeals that decision.

## STATEMENT OF FACTS

***Evidence and Argument Presented at the Detention Hearing: Danger to the Community***

The government argued at the detention hearing that Mr. Snyder is a danger to the community because he is a substitute teacher for kindergarten through twelfth grade students and has admitted to investigators that he has a sexual interest in children. (Tr.[1] at 7-8.) The government argued that "it is disturbing" that Mr. Snyder continues to teach even though he knows he has a sexual attraction to children. (Tr. at 10). The government also alleged that Mr. Snyder lives in a trailer park community in close proximity to children. (Tr. at 15.)

In response, defense counsel noted that there had never been any "allegation that [Mr. Snyder] ever abused his position of trust" or any complaint about Mr. Snyder acting inappropriately with children in any of the schools in which he serves as a substitute teacher. (Tr. at 18.) Further, defense counsel noted that there is "no allegation that he had a hands-on offense" and "[n]o allegation that he had the intent to contact any of these people in the photographs." (Tr. at 18-19.) It is undisputed that Mr. Snyder has no criminal record.

The government claimed that investigators found two computers with images of child pornography. (Tr. at 12.) The government alleged that forensics found search terminology, such

---

[1] "Tr." refers to Transcript of Detention Hearing held on September 2, 2015 before Judge Dancks.

as "boy genitalia," "skinny dipping kids," "dead boy," "Website A boy," " child genitalia check," "young mail (sic) genitalia check," "naked boy hospital," "nude boy injured," "boy boner," "boy balls," "boy jacking," injured genital boys," "flaccid child," "boy wanking," "boy shower," " boy naked," "tortured boy," "boy naked swim," "boy pee," "boy nut grabbing," "circumcised boy photo." (Tr. at 13-14.) The government argued that such search terminology is "insight into a person's mind" and an "indicia that it's something they're really looking to try to find." (Tr. at 13.) The government did not introduce any evidence to support the alleged connection between search terms and potential danger to the community. *Id.*

The government alleged that software on Mr. Snyder's computers allowed him to edit videos or images, including images of his trip to Bangladesh on a CD entitled My Photo Bangladesh. (Tr. at 11.) Although the government alleged that Mr. Snyder took the video, Mr. Snyder denied taking it. (Tr. at 19.) The images on the video included those of a boy between the ages of ten and thirteen years old in which the edits focused on the boy's genitals. (Tr. at 11.) The government did not, however, claim these to be images of child pornography. *Id.*

The government further speculated that because Mr. Snyder has traveled overseas to "some far Asian countries" which are "known for sex tourism with minors" that Mr. Snyder himself "engag[ed] in sexual activities with minors or minimally in obtaining images and videos of minors engaged in sexual activities." (Tr. at 14.) Again, however, the government did not produce any evidence to support these assertions.

***Evidence and Argument Presented at the Detention Hearing: Risk of Flight***

The government argued that Mr. Snyder is a flight risk because he has had "considerable foreign travels." (Tr. at 3.) The government's only evidence that Mr. Snyder would be a flight risk

was that Mr. Snyder has a U.S. passport at his residence. (Tr. at 4.) The government's attorney admitted that "I don't have any evidence that he traveled very recently." (Tr. at 15.)

Defense counsel argued that Mr. Snyder's possession of a passport is irrelevant because he would be willing to surrender that passport. (Tr. at 16.) Defense counsel further argued that Mr. Snyder has known about the investigation against him since December 2014, and did not take the opportunity to "leave or run away." *Id*.

Defense counsel further demonstrated Mr. Snyder's close ties to the community. First, he has a ninety-one year old aunt, Jean Snyder, who told defense counsel that she sees Mr. Snyder "approximately every two weeks" and speaks to him "regularly" over the phone. (Tr. at 16.) That aunt represented to defense counsel that Mr. Snyder "is always able to help her" and that "[s]he considers him reliable and dependable." *Id*.   Mr. Snyder also "has two sisters and cousins that live in the area." (Tr. at 17.)

Defense counsel presented evidence of Mr. Snyder's commitment to volunteering. (Tr. at 17-18, 24.) Mr. Snyder volunteered at the Bible Baptist Church in North Spencer. (Tr. at 17). His pastor, a church elder, and a friend all submitted letters of support, indicating that Mr. Snyder has been heavily involved in church restoration activities on a daily basis since June 2015 and he has been involved with the church since November 2014. (Tr. at 17-19.) Mr. Snyder also volunteered at the Spencer Historical Society as a historian. (Tr. at 18.) Mr. Snyder was a co-author for a historical book, Bald Hill/The Lost Community. (Tr. at 18.) Lastly, Mr. Snyder volunteered for the military memorial in his hometown. (Tr. at 18.)

### *Evidence and Argument Presented at the Detention Hearing: Collateral Consequences of Detainment*

Defense counsel provided the Court with Mr. Snyder's medical records, which indicate he

4

"had a prior heart attack. He has high blood pressure, high cholesterol, abnormal blood glucose," and that he "has a current abnormal EKG." (Tr. at 20.) As a result of his medical conditions, Mr. Snyder is currently on a number of medications and "has not received any of those medicines since he has been incarcerated." *Id*.

### The Pretrial Detention Order

On the record at the hearing, Magistrate Judge Dancks found that the presumption of detention was not rebutted. (Tr. at 25). The Court issued a formal Pretrial Detention Order on September 4, 2015. (Dkt. No. 8.) It focuses very little on facts specific to Mr. Snyder. *Id*. In one five-sentence paragraph titled "The Weight of the Evidence Against the Defendant," the Court noted (1) that Mr. Snyder admitted to purchasing and viewing child pornography and to searching for images of nude children his whole life; (2) that "[a] search of his residence revealed numerous video[] files containing child pornography, some of which he edited"; (3) that Mr. Snyder "admitted making pictures of a minor nude male child from video he took while on an overseas trip"; (4) the nature of the search terms Mr. Snyder used on websites; and (5) that Mr. Snyder's computer contained images of minor children engaged in sexually explicit conduct. *Id*. at 3-4.

The Court then wrote for an extensive eleven paragraphs, spanning one full page and two half-pages, about issues that are not specific in any way to Mr. Snyder. (Dkt. No. 8 at 4-6). Those eleven paragraphs discuss a December 2012 report from the U.S. Sentencing Commission about federal child pornography offenses. That report is a general overview of a broad issue, not an analysis of the specific facts in this specific case.

None of the facts that the Court considered in the short paragraph specific to Mr. Snyder involved whether or not Mr. Snyder poses a risk of flight. Magistrate Judge Dancks had previously

stated on the record at the detention hearing that Mr. Snyder "knows his way around foreign travel but risk of flight is not as much of a concern." (Tr. at 26.)

Based on the five *sentences* specifically germane to Mr. Snyder and the eleven *paragraphs* not specifically germane to Mr. Snyder, the Court determined that Mr. Snyder is both a flight risk and a danger to the community and ordered him detained. (Dkt. No. 8 at 6).

## <u>ARGUMENT</u>

**THE PRETRIAL DETENTION ORDER SHOULD BE REVERSED BECAUSE THE GOVERNMENT FAILED TO PROVE THAT MR. SNYDER WAS EITHER A RISK OF FLIGHT OR A DANGER TO THE COMMUNITY AND DETAINING MR. SNYDER WOULD ADVERSELY AFFECT HIS HEALTH.**

Mr. Snyder argues that Magistrate Judge Dancks incorrectly determined that he posed a flight risk and a risk of danger to the community. He argues that he produced evidence demonstrating that he was entitled to conditional release and that the government did not meet its burden of proof.

To detain a defendant, a court must determine that the person may flee the jurisdiction or pose a danger to the community. 18 U.S.C § 3142(d)(2). Because this is a presumption of detention case under 18 U.S.C. § 3142(f)(1)(A), Mr. Snyder was required to rebut the presumption in favor of detention. *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "In a presumption case . . . a defendant bears a limited burden of production--not a burden of persuasion--to rebut the presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *Id.* The evidence presented by the defendant is then weighed along with other factors. *United States v. Jones*, 566 F. Supp. 2d 288, 290 (S.D.N.Y. 2008). These factors include (1) the nature of the offense charged; (2) the weight of the evidence against the defendant; (3) the

6

defendant's history and characteristics; and (4) the nature and seriousness of danger that the defendant would pose to the community if released. 18 U.S.C § 3142(g). Even in a presumption case, it is the government that retains the burden of proving that the defendant is both (1) a danger to the community and (2) a flight risk.

A district court must apply a de novo standard in reviewing a magistrate judge's initial bail determination. *United States v. Vasconcellos*, 519 F. Supp. 2d 311, 314 (N.D.N.Y. 2007). De novo review requires a district court to give "fresh consideration" to the disputed issues. *See United States v. Raddatz*, 447 U.S. 667, 675 (1980).

**A. Mr. Snyder has rebutted the presumption that he is a risk of flight because he has strong ties to the community and is willing to surrender his passport.**

The government bears the burden of showing by a preponderance of the evidence that a defendant is a risk of flight. *United States v. Chimurenga*, 760 F.2d 400, 405-406 (2d Cir. 1985). Mr. Snyder has shown that effectively rebutted the presumption because of his professional and family ties to the area, as well as his willingness to surrender his passport.

In determining risk of flight, the court must assess whether (1) the defendant will likely flee the jurisdiction if released; and (2) court-imposed release conditions will guard against probability that the defendant will flee. *See* 18 U.S.C. § 3142(e); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). In making this assessment, the court may consider the defendant's criminal history, "general lack of ties to the community, hidden assets and the use of false names." *United States v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987).

Mr. Snyder has strong ties to the community, which ensure that he will not flee the jurisdiction. Although Mr. Snyder lived in Pennsylvania for approximately six years during the 1970s and in Saudi Arabia from 1991-1997, he has been a resident of upstate New York for the

7

majority of his life. The Pretrial Services Report noted that Mr. Snyder lived at his current address in Etna, New York for eighteen years.

Mr. Snyder is devoted to his family members in the area. Mr. Snyder keeps in regular contact with his elderly aunt, visiting at least every two weeks and helping her whenever she is in need of it. Mr. Snyder also has two sisters who live in Owego and cousins who reside in the area.

Because Mr. Snyder is rooted in upstate New York, he has developed professional and personal ties in the area. The Pretrial Services Report noted that Mr. Snyder has been employed as a substitute teacher in and around Tompkins County since 1997. Additionally, letters of support state that Mr. Snyder dedicated his time volunteering on a daily basis at the North Spencer Christian Academy in order to help with their reconstruction and repair activities, attends multiple church activities each week, volunteered his time as a historian, and has volunteered for the military memorial in his hometown. Although the government has accused Mr. Snyder of being calculated in deciding when to start volunteering (Tr. at 24), it can be proven that Mr. Snyder has started volunteering well before he knew that he was being investigated. For example, the book that he co-authored was published in October 2014, thus the research must have been done well before that date, and Mr. Snyder only learned of the investigation in October 2014.

Although Mr. Snyder previously worked overseas in Saudi Arabia and has traveled extensively overseas, the last time that Mr. Snyder travelled outside of the United States was in 2008 when he visited Indonesia. The government admitted that it does not "have any evidence that he traveled very recently." (Tr. at 15). Magistrate Judge Dancks stated at the detention hearing that Mr. Snyder "knows his way around foreign travel but risk of flight is not as much of a concern."

(Tr. at 26.)

In addition to Mr. Snyder's strong ties to the community, which make him unlikely to flee, the Court can impose conditions ensuring that Mr. Snyder is not a flight risk. Mr. Snyder is willing to surrender his passport to the Court as one of his conditions for release. Additionally, Mr. Snyder is willing to comply with the mandates of electronic monitoring and submit to a condition of home detention. These conditions, along with his Mr. Snyder's strong ties to upstate New York and his limited financial resources would certainly assure that Mr. Snyder would not be a risk of flight.

This Court has allowed the release of a defendant on a much weaker showing in the past. In *Vasconcellos*, the Court released a defendant on bond even though he was an unemployed drug dealer, smoked marijuana habitually, and did not maintain ties with any of his children's mothers. There, the Court found release appropriate because a court-imposed $150,000 bond ensured that the defendant would appear at trial. *Vasconcellos*, 519 F. Supp. 2d at 318-19. Mr. Snyder's demonstrated commitment to the community is vastly stronger than the defendant's in *Vasconcellos*. Accordingly, the Court should reverse Magistrate Judge Dancks' finding that detention is appropriate on risk-of-flight grounds.

**B.  Mr. Snyder has rebutted the presumption that he is a danger to the community.**

The government also bears the burden of showing by clear and convincing evidence that a defendant is a danger to the community. *Chimurenga*, 760 F.2d at 403. Mr. Snyder has effectively rebutted the presumption because he is willing to give up access to a computer, stop teaching, and comply with the provisions of electronic monitoring which will ensure that he is not a danger to the community.

To pose a threat to the community, a defendant's past behavior must demonstrate a strong probability that the defendant will commit additional crimes when released. *See United States v. Barnett*, No. 5:03-CR-243, 2003 WL 22143710, at *7 (N.D.N.Y. Sept. 17, 2003). The district court may only detain a defendant and deprive him of his liberty if "neither stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community." *Vasconcellos*, 519 F. Supp. 2d at 317. In cases where the defendant has only been charged with receiving and possessing pictures of child pornography, courts have granted pretrial release subject to a few conditions because the "defendant has not been charged with any crime involving personal contact or direct observation of a minor." *United States v. Merritt*, 612 F. Supp. 2d 1074, 1076 (D. Neb. 2009); *see United States v. Polouizzi*, 697 F. Supp. 2d 381, 396 (E.D.N.Y. 2010) (finding that the defendant did not pose a risk to society or to children where "[t]he child pornography pictures at issue were discovered on a computer, in a double locked room, in the privacy of the defendant's garage"); *see also United States v. Peeples*, 630 F.3d 1136, 1137 (9th Cir. 2010) (affirming the decision of the magistrate judge, which granted pretrial release on the conditions of (1) electronic monitoring, (2) restrictions on travel, (3) avoiding contact with the alleged victim, (4) reporting to pretrial services, and (5) electronic monitoring, where the government alleged that "approximately 5,000 potential child pornography files were located on the computer seized from [the defendant's] residence.")

In *Merritt*, the court released the defendant, but prohibited "the defendant's access to a computer without prior approval of the court or his supervising pretrial services officer, prohibiting defendant from accessing the internet, email, or online inter-computer communications, and requiring the defendant to submit to unannounced examinations of his computer hardware and

software, together with other conditions." *Id.* at 1075-1076. The defendant there had a minor criminal history, but no "history of violence or assaultive or even threatening behavior." *Id.* at 1076. The court found that the defendant did not pose "any risk whatsoever of offending against a minor," let alone pose "a risk of danger to any other person," and even excluded the conditions of a curfew and electronic monitoring, holding that those conditions are "tools better suited to limit a person's movements when he is a flight risk." *Id.*

Moreover, a magistrate judges in this district conditionally released a defendant where the government made no showing that the defendant was a risk of flight or a danger to the community, and only relied upon the statutory provisions of the Adam Walsh Act Amendments. *United States v. Karper*, 847 F. Supp. 2d 350, 363 (N.D.N.Y. 2011). In *Karper*, the defendant was charged by indictment with receipt and possession of child pornography. Because the government did not allege the defendant "had physically harmed a minor or would in the future or even intimidated any other inappropriate behavior by him, except pointing to the nature of the charge," Magistrate Judge Treece noted that simply seizing the defendant's computer, where the child pornography was discovered, and directing the defendant to not use a computer or the internet without first notifying pretrial services was sufficient to "eliminate the possibility of potential on-going harm to children." *Id.* at 363.

Mr. Snyder's recent alleged violations do not suggest that he poses a threat to the community. As in *Merritt*, *Karper*, *Polouizzi*, and *Peeples*, Mr. Snyder has neither been charged with a crime involving personal contact with a minor, nor has he been charged with having directly observed a minor. The charges pending against Mr. Snyder only allege receipt and possession of child pornography, where the images remain on his computer. Similar to *Merritt*, Mr. Snyder does

11

not exhibit any violent, assaultive, or threatening behavior. As in *Merritt*, Mr. Snyder does not have a criminal history or a history of substance abuse.

Moreover, there are several potential pretrial release conditions that would minimize the alleged risk of harm to the community. First, Mr. Snyder is willing to stop working as a teacher as a condition of his pretrial release, which will ensure that he will not be in proximity to children in public schools. Second, Mr. Snyder is not opposed to home confinement as a condition of his pretrial release. Other conditions of pretrial release that the Court could impose are: (1) an order prohibiting him from having any contact with a minor; (2) electronic monitoring; (3) curfew; (4) prohibitions or restrictions on access to a computer and/or internet; and/or any other conditions this Court would see fit under the circumstances. Therefore, there are appropriate alternatives to detention which would ensure that Mr. Snyder will not be a danger to the community if he is released pending trial.

### C. Mr. Snyder's health issues are an additional factor weighing in favor of release pending trial.

Mr. Snyder also respectfully asks the Court to consider the collateral consequences of detaining him. Mr. Snyder is sixty-six years old and has a number of health issues, including hypothyroidism, hyperlipidemia, hypertension, hypercholesterolemia, impacted cerumen, and old myocardial infarction. As a result of these conditions, Mr. Snyder has been on several medications. Mr. Snyder's health issues are an additional factor weighing in favor of his release pending trial.

**CONCLUSION**

Based upon the foregoing, the defendant should be released with appropriate conditions while his case is pending.


DATED:    September 23, 2015                    LISA A. PEEBLES
                                                Federal Public Defender


                              By:      *S/Randi J. Bianco, Esq.*
                                       Randi J. Bianco, Esq.
                                       Bar Roll No. 507514
                                       Office of the Federal Public Defender
                                       4 Clinton Square, 3rd Floor
                                       Syracuse, New York      13202
                                       (315) 701-0080

TO:    Miroslav Lovric, Esq., AUSA
       Robert Snyder


13